## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOANNE BADGETT, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | )   Civil Action No. 11-01363 (TFH) |
| v. | ) |
| | ) |
| DISTRICT OF COLUMBIA, *et al.,* | ) |
| | ) |
| Defendants. | ) |
| ———————————————————— | ) |

## <u>MEMORANDUM OPINION</u>

Plaintiffs, 34 former employees of the District of Columbia's Department of Parks

and Recreation, brought this action seeking monetary damages and injunctive relief

against the District of Columbia.  The claims originate from Plaintiffs' dismissal from

their positions pursuant to a reduction-in-force.  Plaintiffs' five count Complaint alleges

they were wrongfully terminated from their positions and that the District violated their

Fifth Amendment procedural and substantive due process rights during their

administrative appeal of the reduction-in-force.

Pending before the Court are Plaintiffs' Motion for Partial Summary Judgment[1]

[Dkt. No. 3], Defendant's Motion to Dismiss [Dkt. No. 7] and Plaintiffs' Motion to

Supplement the Record In Support of Its Motion for Partial Summary Judgment [Dkt.

No. 15].  Upon careful consideration of the motions, responses thereto, and the record in

this matter, the Court grants the District's Motion to Dismiss with respect to Plaintiffs'

federal law claims (Counts I-IV); denies Plaintiffs' Motion for Partial Summary

---

[1] Contrary to the mandates of Fed. R. Civ. P. 56(a), Plaintiffs' Motion for Partial Summary Judgment fails
to articulate which count(s) they seek summary judgment on.

Judgment; dismisses Plaintiffs' remaining state law claim (Count V) without prejudice; and dismisses Plaintiffs' Motion to Supplement the Record In Support of Its Motion for Partial Summary Judgment as moot.

## I.   BACKGROUND

The Court lacks no familiarity with the parties in this action nor the circumstances from which the action arises.  Indeed, the present suit represents the third action, all originating from the same essential facts, brought against the District Defendants within the last three years.  *See Am. Fed'n of Gov't Emps., Local 2741 v. District of Columbia*, 689 F. Supp. 2d 30 (D.D.C. 2009) ("*AFGE I*"); *Am. Fed'n of Gov't Emps., Local 2741 v. District of Columbia*, No. 2009 CA 8263 (D.C. Super. Ct. June 23, 2011) ("*AFGE II*").

Prior to September of 2009, the District of Columbia's Department of Parks and Recreation ("DPR"), through its Office of Educational Services ("OES"), "operated approximately twenty-two Early Care and Before and After School Care Centers . . . throughout the District of Columbia."  Compl. ¶ 4 [Dkt. No. 1].  At some point in 2009, District officials revealed a $4 million funding gap between the operating costs for OES's programs and the revenue generated by those services.  Id. ¶ 18, 21.  Citing the fiscal distress as the cause, the District elected to "privatize the daycare workers['] jobs and/or transfer those positions to the District Public School System."  Id. ¶ 15; see also id. ¶¶ 17, 19.  Furthermore, the District notified Plaintiffs' union, American Federation of Government Employees, Local 2741 ("AFGE" or "Local 2741"), DPR would undergo a reduction-in-force ("RIF").  Id. ¶ 16.  Effective September 25, 2009, 165 positions within DPR were eliminated.  Id. ¶ 20.

Plaintiffs were among those whose positions were eliminated through the RIF.  Id. ¶ 1.  According to Plaintiffs, the District "intentionally" and "maliciously" manufactured

the budgetary shortfall "in order to justify [the] closure of child care centers and

contract[] out services originally provided by OES."  Id. ¶ 10.  They allege, the District

did so by: intentionally suppressing program enrollment figures; declining to apply for

federal funding for the programs; and unlawfully reallocating some $4 million in

appropriated funds.  Id. ¶ 28.  The following actions ensued.

**A.      Prior Litigation**

         In August of 2009, individual OES employees, Local 2741, and its bargaining

unit members filed suit in this Court seeking to enjoin the RIF.  *See AFGE I*, 689 F. Supp.

2d at 33.  Relying on 42 U.S.C. § 1983, the plaintiffs in *AFGE I* alleged the District's

actions leading up to the RIF violated their procedural and substantive due process rights

as well as District law.  *Id.*  The Court dismissed the procedural due process claim for

failure to exhaust available administrative remedies.  *See id.* at 35-36.  The substantive

due process claim, on the other hand, was dismissed on its merits for failing to state a

claim for relief.  *See id.* at 36.  The Court declined to exercise supplemental jurisdiction

over the plaintiffs' state law claims.  *Id.* at 37.

         Weeks after this Court dismissed *AFGE I*, Local 2741, its bargaining unit

members, and 34 individually named DPR employees  filed a complaint against the

District of Columbia in the Superior Court for the District of Columbia.  Their amended

complaint alleged numerous violations of District law.  *See Am. Fed'n of Gov't Emps.,*

*Local 2741 v. District of Columbia*, No. 2009-CA-8263 (D.C. Super. Ct. June 23, 2011)

(attached as Ex. 1 to Def.'s Mot. to Dismiss) [Dkt. No. 7-1].  Also finding the plaintiffs

had not exhausted their administrative remedies, the Superior Court dismissed the

plaintiffs' claims.  *Id.* at 7.

B.      **Appeal to the Office of Employee Appeals**

Plaintiffs eventually turned to the administrative process prescribed by the

Comprehensive Merit Protection Act ("CMPA"), D.C. Code §§ 1-601.01 *et seq.,* which

governs most grievances by District employees.  *See District of Columbia v. Thompson*,

593 A.2d 621, 634 (D.C. 1991) (noting the CMPA was created as "a mechanism for

addressing virtually every conceivable personnel issue among the District, its employees,

and their unions…"); *Dickerson v. District of Columbia*, 806 F. Supp. 2d 116, 121

(D.D.C. 2011).  In the fall of 2009, pursuant to the CMPA, Plaintiffs appealed the RIF to

the District's Office of Employee Appeals ("OEA").  See Compl. ¶ 31.  Section 1-606.03

of the CMPA governs the appeals procedure, including timing for the resolution of

appeals before the OEA.  See D.C. CODE § 1-606.03(c).  According to § 1-606.03, the

OEA is to make jurisdictional determinations within 45 days of the filing of an appeal

and decisions on the merits of an appeal are to be issued within 120 days of the appeal.

Id.  In the spring of 2012, well after the statutory deadlines had passed, the OEA issued

initial decisions upholding the RIF.[2]  See Initial Decision (March 20, 2012); Initial

Decision (March 30, 2012); Initial Decision (April 3, 2012) [Dkt. No. 21-2].[3]  At oral

argument, Plaintiffs represented they did not appeal the OEA's initial decision.

C.      **Present Action**

Counts I-III of Plaintiffs' five-count Complaint allege Plaintiffs were terminated

without an opportunity to be heard in violation of their Fifth Amendment procedural due

---

[2] Plaintiffs' individual appeals were consolidated into three actions before the OEA and resulted in three "Initial Decisions".  See Initial Decision (March 20, 2012); Initial Decision (March 30, 2012); Initial Decision (April 3, 2012) [Dkt. No. 21-2].  While the Initial Decisions on the consolidated actions were before three different Administrative Law Judges and the language used in each of the decisions varies slightly, the decisions are the same in substance.  As such, the Court cites to the March 20, 2012 Initial Decision for ease of reference and refers to the decisions in the singular throughout its Opinion.

[3] During oral argument on this matter, Plaintiffs represented they would not appeal the OEA's decision.

process rights; Count IV alleges the OEA's delay constituted a violation of Plaintiffs' substantive due process rights under the Fifth Amendment; and Count V alleges wrongful termination in violation of District law. Both sides have filed dispositive motions in this matter. Plaintiffs seek partial summary judgment. The District seeks dismissal of Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction, or, in the alternative, under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. At the outset, the Court notes that because it has been asked to consider matters outside of the pleadings, it will treat the District's motion to dismiss under Rule 12(b)(6) as a motion for summary judgment under Federal Rule of Civil Procedure 56(a). See FED. R. CIV. P. 12(d).

## II.    STANDARD OF REVIEW

Rule 56(a) provides "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). As the rule suggests, the party seeking summary judgment bears the burden of establishing no genuine dispute exists as to any material fact. *See Celotex*, 477 U.S. at 323. This burden may be satisfied by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c). An adverse or nonmoving party may oppose a properly supported summary judgment motion by "[setting] forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (noting "mere allegations or denials" by the nonmoving party insufficient). When considering the motion, "[t]he evidence of the nonmovant is to be believed, and all

justifiable inferences are to be drawn in his favor." *Id.* at 255.  Summary judgment is

appropriate where "the nonmoving party has failed to make a sufficient showing on an

essential element of her case with respect to which she has the burden of proof." *Celotex*,

477 U.S. at 323.

A motion to dismiss under Rule 12(b)(1) challenges the court's power to hear a

case.  "Federal courts are courts of limited jurisdiction.  They possess only that power

authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511

U.S. 375, 377 (1994) (citations omitted).  When challenged on the issue, the party

asserting subject-matter jurisdiction bears the burden of establishing that the court does in

fact have subject-matter jurisdiction over the dispute. *Moms Against Mercury v. FDA*,

483 F.3d 824, 828 (D.C. Cir. 2007).

## III.     DISCUSSION

The Court first addresses, and ultimately rejects, the District's arguments that

Plaintiffs' claims must be dismissed for lack of subject-matter jurisdiction or, in the

alternative, under the doctrine of res judicata.  The Court then turns to Plaintiffs' due

process claims and concludes Plaintiffs' claims must be dismissed.

### A.     Subject-Matter Jurisdiction

Defendants argue the CMPA represents the sole recourse for Plaintiffs'

grievances and divests this Court of jurisdiction to hear their claims.  See Defs.' Mot. to

Dismiss at 10-11.  The Court disagrees.  Plaintiffs' Complaint is dominated by federal

law claims arising under 42 U.S.C. § 1983.  It is firmly established that the CMPA's

"statutory remedy does not foreclose this Court from entertaining [a] constitutional

question over which it has original jurisdiction under 28 U.S.C. § 1331", such as a claim

under § 1983. *Deschamps v. District of Columbia*, 582 F. Supp. 2d 14, 16 (D.D.C. 2008)

(citing among other authorities *Lightfoot v. District of Columbia*, 448 F.3d 392, 399

(D.C. Cir. 2006)).  The broad purview of the CMPA does not altogether extinguish this

Court's power to entertain Plaintiffs' federal question claims arising under § 1983.

*Matthews v. District of Columbia*, 675 F. Supp. 2d 180, 184-85 (D.D.C. 2009).  The

District's motion to dismiss under Rule 12(b)(1) is denied.

**B.      Res Judicata**

Defendants also invoke the doctrine of res judicata to argue the litigation in *AFGE*

*I* and *II* precludes Plaintiffs' claims here.  "The doctrine of res judicata prevents

repetitious litigation involving the same causes of action or the same issues."  *Sheppard*

*v. District of Columbia*, 791 F. Supp. 2d 1, 4 (D.D.C. 2011) (quoting *I.A.M. Nat'l*

*Pension Fund v. Indus. Gear Mfg. Co.*, 723 F.2d 944, 946 (D.C. Cir. 1983)).  The

preclusive effects of res judicata come in two forms – claim preclusion and issue

preclusion.  *See NextWave Pers. Communs., Inc. v. FCC*, 254 F.3d 130, 143 (D.C. Cir.

2001).  "Under the claim preclusion aspect of res judicata, a final judgment on the merits

in a prior suit involving the same parties or their privies bars subsequent suits based on

the same cause of action."  *Id.* (quoting *I.A.M. Nat'l Pension Fund*, 723 F.2d at 946-47).

"Whether two cases implicate the same cause of action turns on whether they share the

same nucleus of facts."  *Apotex, Inc. v. FDA*, 393 F.3d 210, 217 (D.C. Cir. 2004) (internal

quotations and citations omitted).  Thus, "a final judgment on the merits of an action

precludes the parties or their privies from litigating issues that were or *could have been*

*raised* in that action."  *Drake v. FAA*, 291 F.3d 59, 66 (D.C. Cir. 2002) (quoting *Allen v.*

*McCurry*, 449 U.S. 90, 94 (1980)).

The doctrine's preclusive effects do not extend to the claims now raised by

Plaintiffs.  In *AFGE I*, the plaintiffs' procedural due process claim was dismissed because

the plaintiffs had yet to exploit available administrative remedies.  *See AFGE I*, 689 F.

Supp. 2d at 35.[4]  In light of the OEA's resolution of Plaintiffs' appeals and Plaintiffs'

decision not to appeal, Plaintiffs have now effectively exhausted their administrative

remedies.  See D.C. CODE § 1-606.03(c); *Mpoy v. Fenty*, 2012 U.S. Dist. LEXIS 90960,

*14-15 (D.D.C. July 2, 2012) (concluding OEA's dismissal of plaintiff's appeal for lack

of subject matter jurisdiction constituted exhaustion of the CMPA's remedies).  The

dismissal of the plaintiffs' procedural due process claim in *AFGE I* for failure to exhaust

administrative remedies does not act to bar similar claims once the exhaustion condition

has been satisfied.  *See Murthy v. Vilsack*, 609 F.3d 460, 466 (D.C. Cir. 2010) ("where an

action is prematurely filed or the plaintiff has failed to satisfy a precondition to suit, a

final judgment for the defendant 'does not bar another action by the plaintiff after the

claim has matured, or the precondition has been satisfied'" (quoting in part

RESTATEMENT (Second) OF JUDGMENTS § 20(2) (2009)).

　　　　Additionally, Plaintiffs' due process claims – both procedural and substantive –

based on the OEA's delayed resolution of Plaintiffs' appeals, are not claim precluded

because they rely on facts which materialized after the resolution of the prior litigation.

*Drake*, 291 F.3d at 66 ("[r]es judicata does not preclude claims based on facts not yet in

existence at the time of the original action (citation omitted)).  At the time of filing *AFGE*

*I* and *II*, Plaintiffs had not initiated the administrative proceedings, let alone suffered the

delay which forms the predicate for their claims.

---

[4] In *AFGE II*, the District of Columbia Superior Court dismissed the plaintiffs' complaint in its entirety for
failure to exhaust administrative remedies.  *See AFGE II*, No. 2009 CA 8263.

C.      **Federal Constitutional Claims**

Plaintiffs' federal constitutional claims sound under 42 U.S.C. § 1983.  Section 1983 provides, "[e]very person, who under color of any statute, ordinance, regulation, custom, or usage, of any State…subjects, or causes to be subjected, any citizen of the United States…to the deprivation of any rights…secured by the Constitution…shall be liable to the party injured in an action at law…"  Id.

Pursuant to § 1983, Plaintiffs allege their Fifth Amendment rights were violated when they were deprived of a constitutionally-protected interest in their employment without due process of law.  More specifically, Counts I-III of Plaintiffs' Complaint allege procedural due process violations and Count IV alleges a substantive due process violation.   Counts I-III may be further distinguished in that Count II alleges the District's statutory scheme denied Plaintiffs an opportunity to be heard, in violation of their procedural due process rights, while Counts I and III are premised on the OEA's delayed ruling on Plaintiffs' appeals.

1.      *Count II – procedural due process claim based on the District's statutory scheme*

The second count of Plaintiffs' Complaint alleges the District's statutory scheme denied Plaintiffs an opportunity to be heard after their termination, in violation of their Fifth Amendment procedural due process rights.[5]  Compl. ¶¶ 55-62.  The District contends Plaintiffs received all of the process they were entitled to.  Def.'s Mot. to Dismiss at 13-14.  Plaintiffs claim cannot survive because they have neither established that the process available them was inadequate nor that they were denied such process.

---

[5] Plaintiffs do not challenge the adequacy of the pre-termination process they received.

"A procedural due process violation occurs when an official deprives an individual of a liberty or property interest without providing appropriate procedural protections." *Atherton v. D.C. Office of the Mayor*, 567 F.3d 672, 689 (D.C. Cir. 2009). To establish a violation of procedural due process, a plaintiff must establish two things. First, that they "had a protected property interest in [their] job." *Thompson v. District of Columbia*, 530 F.3d 914, 918 (D.C. Cir. 2008). Second, assuming they possessed a protected interest, a plaintiff must show they were deprived of the interest without due process of law. *See Propert v. District of Columbia*, 948 F.2d 1327, 1331 (D.C. Cir. 1991).

Of course, "[o]nce it is determined that due process applies, the question remains what process is due." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal quotations and citation omitted); *see also Nat'l Council of Resistance of Iran v. Dep't of State*, 251 F.3d 192, 208 (D.C. Cir. 2001). However the timing and extent of the process due is circumstance dependent. *Mathews*, 424 U.S. at 334 ("[d]ue process is flexible and calls for such procedural protections as the particular situation demands" (quoting *Morrissey*, 408 U.S. at 481 (1972)).

Plaintiffs argue that as career service employees under D.C. Code § 1-608.01 they possessed a protected property interest in their positions. See Compl. ¶ 42. The Court assumes arguendo Plaintiffs were career service employees and therefore possessed such an interest in their continued employment. *See Fonville v. District of Columbia*, 448 F. Supp. 2d 21, 26 (D.D.C. 2006) ("[i]t is undisputed that the CMPA creates a property

interest for employees governed by it"); *Thompson v. Dist. of Columbia*, 530 F.3d 914, 918 (D.C. Cir. 2008).  Nonetheless, Count II cannot survive the District's motion because Plaintiffs have not established they were denied any process they may have been entitled to.

Under District law, Plaintiffs had at their disposal a number of procedural safeguards to protect against the deprivation of their protected property interest without due process.  First, Plaintiffs were entitled to challenge whether the statutorily prescribed RIF notice and separation procedures were followed.  D.C. CODE § 1-624.08(f)(2). Second, to the extent Plaintiffs wished to argue the termination of their positions through the RIF was mere pretext or subterfuge for some other, impermissible, reason, they were entitled to seek a hearing on the claim.  As this Circuit has pointed out:

> [u]nder the law of both the District of Columbia and this Circuit, an employee with a property interest in his job has the right to due process if he raises a *non-frivolous* claim that his employer eliminated his job, not as a genuine cost-saving measure, but as a pretext for getting rid of him.

*Thompson*, 530 F.3d at 918 (emphasis in original); *see also Anjuwan v. District of Columbia Dep't of Pub. Works*, 729 A.2d 883, 885 (D.C. 1998); *Levitt v. District of Columbia Office of Employee Appeals*, 869 A.2d 364, 366 (D.C. 2005).

Furthermore, if Plaintiffs believed their termination was motivated by some discriminatory purpose, they were entitled to raise a challenge before the OEA or file a complaint in the Superior Court for the District of Columbia. [6]  See D.C. CODE §§ 1-624.08(f)(1), 2-1403.03(b).  Finally, in the instance of an adverse decision from the OEA,

---

[6] During oral argument, Plaintiffs suggested the RIF may have been subterfuge for dismissals motivated by race and age discrimination.  The Court will not consider these belated contentions as no such claims, nor the suggestion of any facts giving rise to such claims, are contained in Plaintiffs' Complaint.  *See Richardson v. Capital One, N.A.*, 839 F. Supp. 2d 197 at 202-203 (D.D.C. 2012) (declining to consider argument by plaintiff not advanced in complaint).

additional procedural safeguards provided for numerous levels of review.  An aggrieved employee may petition the OEA for review of the agency's initial decision.  D.C. CODE 1-606.03(c).  Final decisions of the OEA are appealable to both the Superior Court and the Court of Appeals for the District of Columbia.  See D.C. CODE § 1-606.03(d); *Anjuwan*, 729 A.2d at 885 ("[o]n appeal from the Superior Court's disposition of a petition from an agency finding, our review is the same as it would be if we were reviewing the agency decision directly").

Assessing Plaintiffs' claim against this procedural backdrop, Count II cannot survive because Plaintiffs have not demonstrated the available process was inadequate or that they were denied the aforementioned protections.  Nothing in the record for this matter reflects Plaintiffs sought, but were denied, a hearing on their claims of pretext before the OEA.[7]  Had this been the case, Plaintiffs were entitled to multiple levels of judicial review.  *See Levitt*, 869 A.2d at 366 (reversing OEA's dismissal of employee's appeal of RIF for lack of subject matter jurisdiction and remanding for evidentiary hearing on employee's claim of pretext).  Instead, Plaintiffs stipulated before the OEA that the OEA lacked jurisdiction over their claims.  See Initial Decision at 3; Compl. ¶ 40.  The OEA's decisions thus only addressed whether the required notice and separation procedures were complied with and, finding they had been, upheld Plaintiffs' dismissal pursuant to the RIF.  Id. at 3.  Plaintiffs' procedural due process claim alleging denial of the opportunity to be heard cannot survive where Plaintiffs themselves eschewed the opportunity to exploit the very procedural safeguards which they argue they were denied.  *See Yates v. District of Columbia*, 324 F.3d 724, 726 (D.C. Cir. 2003).

---

[7] The Court does not here venture an opinion on whether Plaintiffs' claims of pretext are sufficient to raise a genuine issue of material fact suggesting they were indeed entitled to an evidentiary hearing before the OEA.

2.      *Counts I and III – procedural due process claims based on administrative delay*

Counts I and III of Plaintiffs' Complaint allege the OEA's delayed ruling on their appeals also constituted a violation of their procedural due process rights.  More specifically, Count I alleges the agency's delay denied them an opportunity to be heard in a meaningful time, Compl. ¶¶ 51-53, while Count III alleges the agency's delay in contravention of District law constitutes a per se violation of their procedural due process rights.  Id. ¶ 71.  Neither claim survives the District's motion.

The argument that administrative delay in contravention of District law constitutes a per se violation of Plaintiffs' Due Process rights is easily dismissed.  As this Court noted in *AFGE I*, "[a] mere violation of law does not give rise to a due process claim".[8]  *AFGE I*, 689 F. Supp. 2d at 35-36 (quoting *AFGE, AFL-CIO, Local 446 v. Nicholson*, 475 F.3d 341, 353 (D.C. Cir. 2007)); *Tate v. District of Columbia*, 627 F.3d 904, 908 (D.C. Cir. 2010).

Nonetheless, there are circumstances under which administrative delay may be so severe that it amounts to a procedural due process violation.  *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 547 (1985) ("[a]t some point, a delay in the post-termination hearing would become a constitutional violation").  However, where, as here, procedural safeguards exist to obviate prejudice from delay and a plaintiff fails to take advantage of those measures, no such constitutional violation occurs.  *See New York State Nat'l Org. for Women v. Pataki*, 261 F.3d 156, 169 (2d Cir. 2001); *Medina v. District of Columbia*, 517 F. Supp. 2d 272, 284 (D.D.C. 2007).

---

[8] This notion applies with equal force to Plaintiffs' substantive due process claim addressed *infra*.  *See McManus v. District of Columbia*, 530 F. Supp. 2d 46, 71 (D.D.C. 2007).

Plaintiffs were not without recourse in the face of the OEA's grievous delay. Plaintiffs could have, under the procedures proscribed by D.C. Court of Appeals Rule 21, sought a writ of mandamus compelling agency action.  *See Medina*, 517 F. Supp. 2d at 283; *Yeager v. Greene*, 502 A.2d 980, 981 n.3 (D.C. 1985) ("the writ of mandamus is technically used as a form to require an official to perform an affirmative, mandatory action..."). Additionally, under § 2-510 of the District of Columbia's Administrative Procedures Act, Plaintiffs could have petitioned the D.C. Court of Appeals "[t]o compel agency action unlawfully withheld or unreasonably delayed."  D.C. CODE § 2-510(a)(2); *see also Medina*, 517 F. Supp. 2d at 283.  Plaintiffs failed to avail themselves of either of these procedural safeguards.  The Court cannot find the OEA's delay amounted to a violation of Plaintiffs' procedural due process rights where Plaintiffs had at their disposal state procedural remedies to mitigate the prejudice of delay but failed to employ those safeguards.  *See Pataki*, 261 F.3d at 169 ("[a] procedural due process violation cannot have occurred when the governmental actor provides apparently adequate procedural remedies and the plaintiff has not availed himself of those remedies" (quoting *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)).

   *3.*   *Count IV – substantive due process claim*

   Count IV of Plaintiffs Complaint alleges the OEA's delay in rendering a decision on Plaintiffs' appeal constitute a violation of their Fifth Amendment substantive due process rights.

   As this Court noted in *AFGE I*, on a substantive due process claim based on executive action, the "threshold question is whether the behavior…[was] so egregious, so outrageous, that it may be fairly said to shock the contemporary conscience."  *AFGE I*, 689 F. Supp. 2d at 36 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8

14

(1998)).  In other words, "plaintiffs would need to demonstrate 'an act of grave

unfairness,' such as 'a deliberate flouting of the law'…"  *AFGE, AFL-CIO, Local 2798 v.*

*Pope*, 808 F. Supp. 2d 99, 111 (D.D.C. 2011) (quoting in part *Am. Fed'n of Gov't Emps.,*

*AFL-CIO, Local 446 v. Nicholson*, 475 F.3d 341, 353 (D.C. Cir. 2007)).  "Inadvertent

errors, honest mistakes, agency confusion, even negligence in the performance of official

duties, do not warrant redress..."  *Silverman v. Barry*, 845 F.2d 1072, 1080 (D.C. Cir.

1988) (citation omitted).

      Here, to be sure, the length of time between the filing of Plaintiffs' appeals and

the resolution of those appeals is alarming.  However, taking the allegations contained in

Plaintiffs' Complaint as true, no set of facts therein establishes the sort of egregious and

deliberate conduct necessary to prevail on a substantive due process violation claim.  As

such, Plaintiffs' substantive due process claim must be dismissed.

**D.**      **Wrongful Termination Claim under District Law**

      Count V of Plaintiffs' complaint alleges wrongful termination in violation of

District law.  A federal district court may exercise supplemental jurisdiction over state

law claims arising from the same common nucleus of facts as an action over which the

court has original jurisdiction.  28 U.S.C. § 1367(a).  However, the court "may decline to

exercise supplemental jurisdiction over a claim" under certain circumstances, such as

when "the district court has dismissed all claims over which it has original jurisdiction."

§ 1367(c)(3).  This decision is left to the discretion of the district court and "[i]n the usual

case in which all federal-law claims are dismissed before trial, the balance of factors to be

considered under the pendent jurisdiction doctrine – judicial economy, convenience,

fairness and comity – will point toward declining to exercise jurisdiction over the

remaining state-law claims."  Shekoyan v. Sibley Int'l, 409 F.3d 414, 423-24 (D.C. Cir.

2005) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).

    In light of the Court's dismissal of all of Plaintiffs' federal claims and upon

consideration of the aforementioned factors, the Court declines to exercise supplemental

jurisdiction over Plaintiffs' wrongful termination claim.  Judicial economy suggests

dismissal.  This matter is in a relatively early phase of litigation as it has not progressed

beyond early dispositive motions and the Court has yet to address the substance of

Plaintiffs' local law claims.  *See Johnson v. District of Columbia*, 869 F. Supp. 2d 34, 27

(D.D.C. 2012).  Further, declining to exercise supplemental jurisdiction will not prevent

Plaintiffs' from pursuing their claim in state court.  Under 28 U.S.C. § 1367(d), filing of

this federal action tolled the statute of limitations on Plaintiffs' state law claims and it

will remain tolled for at least 30 days from the date of this Court's Order dismissing the

federal claims.  28 U.S.C. § 1367(d); *see also Shekoyan*, 409 F.3d at 424.

## IV. CONCLUSION

    For the foregoing reasons, the Court denies Plaintiffs' Motion for Partial

Summary Judgment and grants the District's Motion to Dismiss Counts I-IV.  The Court

declines to exercise supplemental jurisdiction over Count V and therefore dismisses the

count without prejudice.  Finally, in light of these dispositions, the pending Plaintiffs'

Motion to Supplement the Record In Support of Its Motion for Partial Summary

Judgment is denied as moot.

    An appropriate order accompanies this memorandum opinion.


February 25, 2013

                                         Thomas F. Hogan
                                  UNITED STATES DISTRICT JUDGE